Grew, J.
In this case the City of Cleveland, defendant in the court below, for answer to the claim made against it by plaintiff below, The Clements Bros. Construction Company, pleaded by way of justification, and as its only defense, the provisions of an act of the Ohio legislature, passed April 16, 1900, and entitled: “An act to provide for limiting the hours of daily service of laborers, workmen and mechanics employed upon public works, or of work done for the state of Ohio, or any political subdivision thereof, providing for the insertion of certain stipulations in contracts of public works; imposing penalties for violations of the provisions of this act, and providing for the enforcement thereof.” The sufficiency of this answer, as a defense, was challenged by a demurrer filed *207 thereto by plaintiff. Whether snch answer was and is sufficient, and the matter so pleaded defensive, depends entirely Upon whether said act of April 16, 1900, is a valid and constitutional enactment. The provisions of this law are as follows:
“Section 1. The service of all laborers, workmen and mechanics employed upon any public works of, or work done for the state of Ohio, or for any political subdivision thereof, whether said work is done by contract or otherwise, shall be, and is hereby limited, and restricted to eight hours in any one calendar day; and it shall be unlawful for any officer of the state, or of any political division thereof, or any person acting for or on behalf thereof, or any contractor, or subcontractor for any part of any public works of, or work done for such state, or political subdivision thereof, or any person, corporation or association whose duty it shall be to employ or to direct and control the services of such laborers, workmen or mechanics, or who has in fact the direction or control of the services of such laborers, workmen or mechanics, to require or permit them, or any of them, to labor more than eight hours in any one calendar day, except in cases of extraordinary emergency, caused by fire, flood or danger to life and property, and except to work upon public, military or naval works or defenses in time of war, and except in cases of employment of labor in agricultural pursuits.
“Section 2. Each and every contract to which the state of Ohio, or any political subdivision thereof, is a party, and every contract made for or on behalf of the said state, or any subdivision thereof, which contract may involve the employment of laborers, workmen or mechanics, shall contain a stipulation that no laborer, workman or mechanic in the employ of the- *208 contractor, or any subcontractor doing or contracting to do any part of the work contemplated by the contract, shall be required or permitted to work more than eight hours in any one calendar day, except in cases of extraordinary emergency, caused by fire, flood, or danger to life or property, and except to work upon public, military or naval work, or defenses in time of war, and except in cases of employment of labor in agricultural pursuits, and each and every (such) contract shall stipulate a penalty for such violation of the stipulation directed by this act, of ten dollars per each laborer, workman or mechanic, for each and every calendar day in which he shall labor more than eight hours, and the inspector or officer, or person whose duty it shall be to see that the provisions of any such contract are complied with, shall report to the proper officer of such state, or political subdivision thereof, all violations of the stipulation in this act provided for in each and every subcontract, and the amount of the penalties stipulated in any such contract shall be withheld by the officer or person whose duty it shall be to pay the moneys due under such contract, whether the violations for which such penalties were imposed by contractor, his agents or employes, or any subcontractor, his agents or employes, no person on behalf of the state of Ohio, or any political subdivision thereof shall rebate or permit any penalty imposed under such (anyj stipulation herein provided for, unless upon a finding which he shall make up and certify that such penalty was imposed by reason of an error of fact. Nothing in this act shall be construed to authorize the collection of said penalty from the state, or any political subdivision thereof.
“Section 3. Any officer of the state of Ohio, or any *209 political subdivision thereof, or any person acting for ■or on behalf thereof, who shall violate the provision of this act, shall be deemed guilty of a misdemeanor, and •shall he subject to a fine or imprisonment or both, at the discretion of the court, the fine not to exceed five hundred dollars, nor the imprisonment more than one year.
“Section 4. All acts and parts of acts inconsistent with this act, in so far as they are inconsistent, are hereby repealed.
“Section 5. This act shall take effect and be in force from and after its passage.”
The court of common pleas held this law to be constitutional, and held that the answer of defendant, the City of Cleveland, constituted a good defense to the plaintiff’s cause of action, and overruled the plaintiff’s demurrer thereto and gave judgment for ¡said City of Cleveland. This ruling and judgment of the court of common pleas was reversed by the circuit •court of Cuyahoga county, on the sole ground that the court of common pleas erred in overruling the demurrer of plaintiff to said answer. And said circuit court proceeding to render the judgment that the court of common pleas should have rendered, held •said law to be unconstitutional and sustained said demurrer to said answer. And said defendant not desiring to plead further, said circuit court rendered judgment in favor of plaintiff, The Clements Bros. Construction Co., and against said City of Cleveland for the full amount claimed by plaintiff. If the law under consideration is constitutional, then this judgment of the circuit court is erroneous and •should, in this proceeding, he reversed; but if, as found by the circuit court, such law is unconstitutional, then the judgment of said circuit court was *210 right and should be affirmed. Whether such law is constitutional is the sole question presented by the record in this case.
While the particular statute here in question has, not, prior to this time, been before this Court for review, nor has. the precise question here presented heretofore been decided by this Court, yet we are not without pertinent authority and direct adjudication by the courts of last resort in other states, upon the question here involved, and this Court has more than once-been called upon to consider and determine the constitutionality of statutes which were somewhat analogous to the statute under consideration, in that they had for their purpose, or did in effect, limit and restrict the right of contract between employer and employe; and in every instance such statutes have been declared and held by this Court to be unconstitutional.
Counsel for plaintiff in error in this case apparently do not question the correctness of these decisions, and in argument they concede that it is'beyond the power of the legislature to control by legislative-enactment the contracts Avhich shall be made betAveen employer and employe Avhen those persons are indiAdduals or corporate persons and the subject matter-of their contracts is not necessary to be regulated for police reasons. And such clearly is the established law of this and other states. But, they contend that the statute here in question is not an attempt by the legislature of Ohio to restrict or interfere with the right of liberty to contract, but is only in the nature of a direction by a principal to his agent, and therefore within the legislative authority, and matter of' concern to the principal and agent only. They argue-that the several municipal governments of the state. *211 are not in themselves independent and sovereign, but are subdivisions of the general government, created by it with enumerated powers, and with no powers except such as may be fairly drawn from their charters or creation. Hence, they contend that being mere subdivisions of the state, and deriving their powers from the state, such municipalities may be lawfully directed by the legislative will as to what contracts they may make and what provisions and stipulations their contracts shall contain; and that in the contract here in question, the City of Cleveland being a mere agency and instrument of the state, the state- had the right by and through its legislature, to direct and'require the city, as its agent and representative, to insert in this contract the stipulations and provisions therein found. The fallacy of this contention lies in the assumption that the compulsory authority of the legislature over municipal corporations is so absolute and arbitrary that it may dictate the specific terms upon which such municipality shall contract, and may prescribe what stipulations and conditions its contracts shall contain, although such contracts may, as in this case, relate only to matters of purely local improvement. This is a misapprehension of the legislative authority, for no such right or power has been delegated to, or is possessed by, the general assembly.
As said in 4 Hill (N. Y.), 114: “Under our system of government the legislature is not supreme. It is only one of the organs of that absolute sovereignty which resides in the whole body of the people. Like other departments of the government it can only exercise such powers as have been delegated to it, and when it steps beyond that boundary its acts, like those of the most humble magistrate in the state who tran *212 scends liis jurisdiction, are utterly void. Therefore, as the security of life, liberty and property lay at the foundation of the social compact, to say that the grant of legislative power includes the right to attack private property would be equivalent to saying that the people had delegated to their servants the power of defeating one of the great ends for Avhich government Avas established. This end being the protection •of the absolute right to life, liberty and property.”
Again counsel for plaintiff in error are mistaken in the assumption that the statute here under consideration is, and should be regarded as, a mere direction by the sovereign authority, the state of Ohio, to one of its agents, the City of Cleveland, that contracts made by said city in certain cases, and for a certain character of work, are to be made in a particular way. In the case of People ex rel. Rodgers v. Coler, 166 N. Y., 1, a statute distinguishable in no essential feature from the statute here under consideration was before the Court of Appeals of that state for review, its constitutionality having been • challenged. O’Brien, judge in that case, in discussing the proposition we are now considering, speaking for the majority of the court, says: “Nor is it entirely true that the statute is a mere direction by the sovereign authority to one of its own agencies to contract in certain cases in a particular way. It is all that no doubt and very much more since it affects personal and municipal rights in many directions that are of vastly more importance than the mere form of a contract to perform municipal Avork. It is true enough that a city is an agency of the state to discharge some of the functions of government, but these terms do not adequately describe its true relation to the state or the people. A municipal officer directing a local improvement is not *213 the agent .of the state. lie is the agent of the city and the city alone is responsible for his negligence or misconduct. If the authorities in charge of the streets of a city are agents of the state, the city ought not to be held liable for their acts or omissions. * -* the city is a corporation possessing all the powers of corporations generally and cannot be deprived of its property without its consent or due process of law any more than a private corporation can,, and since its revenues must be used for /municipal purposes, it is difficult to see how the legislature can make contracts for it which involve the expenditure of these revenues without its consent.” And further in the same opinion it is said: “The right which is conceded to every private individual and every private corporation in the state to make their own contracts and their own bargains is, (by this statute) denied to cities and to contractors for city work; and moreover if the latter attempt to assert such right the money earned on the contract is declared forfeited to the city without the intervention of any legal process, or judicial decree. * * *
The contractor is a private individual engaged ini private business. When he enters into a fair and: honest contract for some municipal improvement,, that contract is property entitled to the same protection as any other property. It is not competent for the legislature to deprive him of the benefit of this, contract by imposing burdensome conditions with respect to the means of performance, or to regulate the' rate of wages which he shall pay to his workmen or to withhold the contract price when such conditions are' not complied with in the judgment of the city. When he is not left free to select his own workmen upon such terms as he and they can fairly agree upon, he. *214 'is deprived of that liberty of action and right to accumulate property embraced within the guaranties of the constitution, since his right to the free use of all his faculties in the pursuit of an honest vocation is so far abridged. * * * The exercise of such a power is inconsistent with the principles of civil liberty, the preservation and enforcement of which was the main purpose in view when the constitution was enacted. If the legislature has power to deprive cities and their contractors of the right to agree with their workmen upon rates of compensation, (or the number of hours that shall constitute a day’s labor), why has it not the same power with respect to all private persons and private corporations? That question can be answered in the language which this court used when a case with features somewhat similar was under consideration. ‘Such legislation may invade one class of rights to-day and another tomorrow and if it can be sanctioned under the constitution, while far removed in time, we will not be far away in practical statesmanship from those ages when governmental prefects supervised the building of houses, the rearing of cattle, the sowing of seed and the reaping of grain, and governmental ordinances regulated the movements and labor of artisans, the rate of wages, the price of food, the diet and clothing of the people land a large range of other affairs long since in all .civilized lands regarded as outside of governmental functions.’ ” As suggested by counsel for defendants :in error, the statute here under consideration, absolutely ignores the fact that municipal corporations in their property rights, and their power to make contracts for local improvements for the benefit of their own citizens, are entitled to the same immunities and are protected by the same constitutional guarantees *215 which shield, the property of individuals or private corporations from legislative aggression. In considering the rights and powers of municipal corporations, in the case of Railroad Co. v. New Orleans, 26 La. An., 481, the Supreme Court of Louisiana says: “A municipal corporation possesses two classes of powers, and two classes of rights, public and private. In all that relates to one class, it is merely the agent of the state, and subject to its control. In the other, it is the agent of the inhabitants of the place; the corporators: maintains the character and relations of individuals, and is not subject to the absolute control of the legislature, its creator.”
In the case of Atkins v. Town of Randolph, 31 Vt., 237, Judge Barrett announcing the opinion of the Supreme Court of Vermont, states the proposition as follows: “It is true as was urged in argument by the learned counsel for plaintiffs, that in some respects legislatures have power in respect to municipal corporations that they have not in respect to private corporations, or individuals. They may alter or abolish municipal corporations at pleasure, but yet, not so as to defeat the pecuniary rights of individuals as against such corporations, or as depending upon their existence. The legislature has the same power in respect to private corporations, when that power is reserved in the law creating them. So far as a municipal corporation is endowed by law with the power of contracting, and as such, is made capable of acquiring, holding and disposing of property, and subject to the liabilities incident to the exercise of such power and capacity, thus being vested with legal rights as to property in contracts and improvements, and subject to legal liabilities in respect thereof, to be ascertained and enforced by suit in the ordinary judicial *216 forums, with the same principles and by the same-means as in the case of a private corporation, such municipal corporation must stand on the same-ground of exemptions from legislative control and. interference as a private corporation.
As to third persons who seek to enforce pecuniary liabilities against towns arising upon contract, such towns are merely private corporations or individuals, and in this respect they are not affected by the purely municipal public and political features that appertain to their corporate existence in virtue, and in reference to which alone they are subject to the absolute control of legislation.”
And to the same effect is the case of the Board of Park Commrs. v. Common Council of Detroit, 28 Mich., 228.
This distinction as to the powers delegated to municipal corporations was clearly recognized and commented upon by this Court in the case of Western College v. Cleveland, 12 Ohio St., 375. In that case,. Judge Gholson, announcing the opinion of the Court,, at page 377, says: “It is the duty of the state government to secure to the citizens of the state, the peaceful enjoyment of their property, and its protection from wrongful and violent acts. For the proper discharge of this duty power is delegated in different modes. One of these is the establishment of municipal corporations. Powers and privileges are also conferred upon municipal corporations, to be exercised for the benefit of the individuals of whom such corporations are composed; and in connection with these powers and privileges, duties are sometimes,, specifically imposed. It is obvious that there is a distinction between those powers delegated to municipal corporations to preserve the peace and protect per *217 sons and property, whether to be exercised by legislation or the appointment of proper officers, and those powers and privileges which are to be exercised for the improvement of the territory comprised within the limits of the corporation, and its adaptation to the purposes of residence or business. As to the first, the municipal corporation represents the state, discharging duties incumbent on the state; as to the second, the municipal corporation represents the pecuniary and proprietary interests of individuals. As to the first, responsibility for acts done or omitted is governed by the same rule of responsibility which applied to like delegations of power; as to the second, the rules which govern the responsibility of individuals are properly applicable.” See also Cincinnati v. Cameron, 33 Ohio St., 366.
The liberal quotations, in this opinion, from the authorities above cited need no further apology upon our part than to say, that if the principles there announced and the conclusions there reached are correct, and we believe they are and adopt them, that they conclusively refute and answer the contention of plaintiff in error that the statute under consideration in this casé does not restrict the right of liberty to contract and is in the nature only of a direction by a principal to its agent.
Again, stripped of its provisions, except so far as they relate to contractors and subcontractors the first section of the statute under consideration reads as follows: “It shall be unlawful for any contractor, or subcontractor for any part of any public works of, or work done for such state, or political subdivision thereof, or any person, corporation or association whose duty it shall be to employ or to direct and control the services of such laborers, workmen or me *218 chanics, or who has in fact, the direction or control of the services of such laborers, workmen or mechanics, to require or permit them, or any of them, to labor more than eight hours in any one calendar day.”
Thus it is apparent that this statute, which is peremptory in terms, is more than a mere direction by a principal to an agent, and that its provisions apply not only to officers and agents of the state of Ohio, but that they apply with equal force to all persons who would enter into contracts with the state or any of its political subdivisions, and undertakes to limit and restrict such persons in their right to contract by prohibiting the making of contracts for day’s work of more than eight hours. What the terms and stipulations of a contract shall be is matter to be determined by the contracting parties, and the right has not been delegated to, nor is it within the power of the general assembly, by mandatory laws to prescribe the terms and provisions that shall be inserted in contracts that may be made between persons legally competent to contract. Doubtless the legislature might, in the absence of contract between the parties, prescribe the number of hours’ labor that should constitute a day’s work, but it is not in the power of the legislature, by the enactment of a positive law, to abridge the right of parties to fix by contract the number of hours that shall constitute a day’s work, nor to deny effect to the stipulations and agreements of the parties themselves touching such matter, except only as the exer- ■ cise of such power may be authorized for the common welfare; and the right to so exercise this power of restraint extends only to matters affecting the public welfare or the health, safety and morals of the community. The number of hours’ labor that shall be performed in a day is an important factor and consti *219 tules mi essential part of every contract of service, and to deny effect to tlie stipulations or agreements between employer and employe touching the number of hours the employe shall labor each day, is, in effect, either to impair the obligation of their contract or to deny to them the right to stipulate or contract touching that matter. The latter is the right denied by the statute here in question. It is, we take it, axiomatic, that in service contracts the right to contract, necessarily includes the right to fix by agreement the number of hours that shall constitute a day’s work for the person employed, but by the terms and provisions of this statute, the parties are not left free to negotiate respecting this matter between themselves, but the number of hours which shall constitute a legal day’s work for the laborer employed on work done for the municipality is, by this statute, arbitrarily fixed and determined, and the statute further provides just what stipulations in this respect shall, by the contracting parties, be incorporated in their contract, and enacts that noncompliance with the provisions of said statute shall be deemed a misdemeanor punishable by fine or imprisonment or both at the discretion of the court. The privilege of making and entering into contracts is more than a mere license or liberty. It is a property right. It is an essential incident to the acquisition and protection of property, and is such right as the legislature may not arbitrarily and without sufficient cause either abridge or take away.
In the case of Palmer & Crawford v. Tingle, decided by this Court and reported in 55 Ohio St., 423, the second clause of the syllabus is as follows: “Liberty to acquire property by contract, can be restrained by the general assembly only so far as such restraint is for the common welfare and equal protection and ben *220 efit' of the people, and such restraining statute must be of such a character that a court may see that it is for such general welfare, protection and benefit. The judgment of the general assembly in such cases is not conclusive.” '
There is one other claim of counsel for plaintiff in error upon which they seem to place some reliance, that should perhaps be briefly noticed, and that is as to the matter of estoppel on the part of defendant in error. Counsel for plaintiff in error say in their brief: “It is plain that the municipality itself cannot complain, for, as has been shown above, it is merely an agency of a higher power, to-Avit: the state, and can only contract as it is authorized by that poAver to do; nor can the contractor be heard to complain, for the city, in pursuance of its granted poAvers, and under restrictions imposed by the act in question, in effect said to him and all otheirs, when it invited bids for the performance of the work, ‘The statute is one of the conditions which must be complied Avith, and an obligation which must be assumed by the contracting party.’
“The contracting party (The Clements Bros. Construction Co.) Avas not compelled to bid, it did so voluntarily, with full knowledge, and Avhen awarded the contract executed it voluntarily, knowing all of its provisions, and assumed the obligations and conditions imposed by the statute.”
It Avould, perhaps, be a sufficient ansAver to this claim of plaintiff in error to say, that the stipulation referred to became a part of the contract not because of any voluntary agreement betAveen the parties that it should be inserted therein, but because the statute forcibly injected it. And that such is the fact we think sufficiently appears from the language of the *221 contract which immediately follows such stipulation. That language is: “The foregoing stipulation is made by reason of and to conform to the requirements of an act of the general assembly of the state of Ohio, ho provide for limiting the hours of daily service of the laborers, workmen and mechanics employed upon public works, or of work done for the state of Ohio, or for any political subdivision thereof, providing for the insertion of certain stipulations to any contracts •of public works’ etc., passed April 16, 1900, to the extent that the provisions of said act are applicable in the performance of this contract.”
But further upon this proposition, as especially pertinent, we quote again from the opinion of Justice O’Brien in the case of People ex rel. Rogers, above cited. lie says: “The fact that certain provisions of the labor law were actually incorporated into the con-, tract signed by the contractor, cannot change or add •anything to the strength of the position assumed by the city. The relator is not estopped by the agreement when there is no element of estoppel in the case, and the question is with respect to the validity of the statute, and not the construction or effect of the contract in that regard. If the law is valid, it governs the contract and the rights of the parties, whether actually incorporated into writing or not, since all contracts are assumed to be made with a view to existing laAvs on the subject. If it is not valid, the contractor has not made it so by stipulating in writing to obey it, and prescribing the penalty for his own disobedience, which is the forfeiture of all rights under the agreement. It is not in the power of the legislature to nroteet an invalid law from judicial scrutiny by providing that it must receive the assent of the parties to every contract to which it relates. * * * Courts *222 in such cases, are not bound by mere forms, but must look at the substance of things, and so viewing 'this transaction, it would be idle to attempt to deceive ourselves with the idea that the question involved in this appeal arises out of the stipulations of the parties to the contract, or is governed by them, rather than the provisions of a statute. The contract is in the form that Ave find it, not because the parties so elected to contract, but for the reason that the statute Avould not permit them to contract in any other way.”
As to the further claim of plaintiff in error that “Even if the provisions of the statute were not actually inserted therein, they Avould be read into the contract as a part of the Iuav of the state,” for answer we need only refer to the third paragraph of the syllabus of Palmer and Crawford v. Tingle, 55 Ohio St., 438, which syllabus is as follows: “While a valid statute regulating contracts is, by its OAvn force, read into, and made a part of such contracts, it is otherwise as to invalid statutes.”
As bearing more or less directly upon the questions herein considered, in addition to the authorities above cited, the following cases will be found instructive: State v. Loomis, 115 Mo., 307; Godcharles v. Wigeman, 113 Pa. St., 431; Ex parte Kuback, 85 Cal., 274; State v. Goodwill, 33 W. Va., 179; Commonwealth v. Perry, 155 Mass., 117; Low v. Rees Printing Co., 41 Neb., 127; People v. Gillson, 109 N. Y., 389; In re House Bill No. 203, 21 Colo., 27; Ib., 21 Colo., 29; State of Ohio v. Lake Erie Iron Co., reported in 33 Law Bulletin, page 6, and affirmed by this court, 51 Ohio St., 632; Marsh et al. v. Poston & Co., reported in 35 Law Bulletin, page 327, affirmed by this court in 54 Ohio St., 681. The Wheeling Bridge and Terminal Co. v. Gilmore. 4 Circ. Dec., 366: 8 C. C. R.. 658.
*223 Our conclusion in this case is, that the statute relied upon and pleaded by plaintiff in error, as a defense to the claim of defendant in error, is unconstitutional, because in conflict with sections 1 and 19 of the Bill of Rights. And therefore such statute cannot avail the city as a defense to shield it from liability to defendant in error, for the amount due said defendant in error under its contract. The circuit court was right in sustaining the demurrer to the answer and in rendering judgment against the city, and that judgment is therefore

Affirmed.

Burket, C. J., Spear, Davis, Shaucic and Price, JJ., concur.