## UNITED STATES v. NORTHERN COMMERCIAL CO. et al.

(Fourth Division. Fairbanks. March 23, 1918.)

No. 764, Criminal.

### 1. Statutes ⊗⁓35½—Referendum—Elections.

The Legislature of Alaska provided by special act for submitting to a referendum vote of the people "the question whether or not they are in favor of a general eight-hour day for all wage-earners and salary earners in the territory of Alaska." The question was carried by an affirmative vote at the general election. The Legislature subsequently passed the act as approved by a majority vote of the electors. On demurrer to an indictment for violation of the act, *held*, neither the organic law creating the Legislature nor any other act of Congress authorized the submission of such question to the popular vote, and the act, being unconstitutional, is null and void.

### 2. Master and Servant ⊗⁓13—Constitutional Law—Labor Laws.

Section 1, chapter 55, Session Laws Alaska 1917, provided, "that a period of employment for all wage earners, and salary earners in the territory of Alaska shall not exceed eight (8) hours within any one calendar day, except in cases where life or property is in imminent danger," under penalty of fine and imprisonment. On demurrer to an indictment for violation of the act, *held*, the act is unconstitutional and void.

The indictment returned by the grand jury charges:

"That the defendant the Northern Commercial Company, a corporation, duly organized and existing under and by virtue of the laws of the state of New Jersey, in the town of Fairbanks, Fairbanks precinct, Fourth judicial division, territory of Alaska, on the calendar day of Monday, March 4, 1918, did then and there agree with and cause one George A. Coleman to perform labor and services for it as its employee on a salary, for a period of more than eight hours on said calendar day, at a time when neither life nor property was in imminent danger, and the said defendant George A. Coleman, at said time and place, at a time when neither life nor property was in imminent danger, as the employee of said Northern Commercial Company, on a salary and pursuant to agreement as aforesaid, did, on said calendar day in the aforesaid town, perform labor and services for said defendant the Northern Commercial Company for a period of more than eight hours, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

Appearing separately, the defendants demur on the following grounds:

"(1) That the matters and things set forth in said indictment do not constitute a crime or public offense.

"(2) That the matters and things charged in said indictment against this appearing defendant are not a crime or a public offense, and said indictment fails to show that any crime or public offense has been committed by this appearing defendant.

"(3) That the act of the Alaska Legislature under which said indictment is laid, and upon which it is based, to wit, chapter fifty-five of the Session Laws of Alaska for the year one thousand nine hundred seventeen, is unconstitutional and void. and is contrary to, and in violation of, the provisions of the Fourteenth Amendment to the Constitution of the United States.

"(4) That said purported act of the Alaska Legislature, under which said prosecution is had, to wit, chapter fifty-five of the Session Laws of Alaska for the year one thousand. nine hundred seventeen, was not passed in accordance with the provisions of section thirteen of the Organic Act, under and by virtue of which the Alaska Legislature is created and performs its functions, all of which is shown by the journals of said Legislature, to which reference is hereby specifically made; the said particulars in which said section thirteen of said Organic Act was violated being as follows: (a) That in the Senate the said bill was not read a second time, and, after it had been amended by a conference committee, was not passed in the manner prescribed by law; (b) that, in the House of Representatives, said act was only read once, and was never given a second or a third reading, and was never passed by the House of Representatives."

This prosecution is laid under chapter 55 of the Session Laws of 1917; the title thereof and first two sections being as follows:

"To regulate and limit the hours of employment for all wage and salary earners in the territory of Alaska, to declare the violation thereof a misdemeanor and to prescribe the punishment therefor. * * *

"Section 1. That a period of employment for all wage-earners and salary earners in the territory of Alaska shall not exceed eight hours (8) within any one calendar day, except in cases when life or property is in imminent danger. Employment as herein used shall be construed as the performance of labor or services for any individual, partnership, association or corporation, whether the person performing such labor or service be a member of such partnership or association or stockholder or officer of such corporation or not.

"Sec. 2. Any person, persons, association or corporation who shall violate or cause to be violated any of the provisions of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred dollars ($100.00), nor more than five hundred dollars ($500.00), or by

imprisonment in the federal jail not less than sixty days (60), nor more than six months (6), or by both such fine and imprisonment. Every day's violation of the provisions of this act, shall constitute a separate offense."

The act is made effective "from and after January 1, 1918."

R. F. Roth, U. S. Atty., of Fairbanks.

McGowan & Clark, of Fairbanks, for defendants.

BUNNELL, District Judge. Quite recently this court had occasion to pass upon the constitutionality of the above act in the case of United States of America v. Northern Commercial Company, on appeal from the commissioner's court, and in general what was there said is applicable to this case.

The court may properly take judicial notice of the Session Laws of 1915, in so far as the same attempt to authorize or direct the enactment of chapter 55 of the Session Laws of 1917. In chapter 58 of the Session Laws of 1915, it is provided in section 1:

"That there shall be submitted to the electors of the territory of Alaska; at the next general election held for the purpose of electing the members of the next Legislature, the question whether or not they are in favor of a general eight-hour day for all wage-earners and salary earners in the territory of Alaska."

And in section 2:

"There shall be printed on each ballot provided for such election, in large type:
" 'For a general eight-hour law'
" 'Against a general eight-hour law.' "

Section 3 provided for canvassing the vote and transmitting the result thereof to the next (1917) succeeding Legislature. Section 4 provided:

"In the event the certificate of the canvassing board shall show that a majority of the electors have declared in favor of a general eight-hour day, the aforesaid next succeeding Legislature shall pass such acts as may be necessary to cause such expression of the wishes of the electors to become effective."

A large majority of the electors expressed themselves in favor of "a general eight-hour law," and the act in question can therefore be presumed to have been passed by the 1917

Legislature in an effort to carry out the directions contained in the 1915 law, with due regard to the fact that a majority of the electors had so expressed themselves. The terms used, "a general eight-hour day," in section 1, and "a general eight-hour law," in section 2, were probably intended to be synonymous, and to refer to hours of labor.

It is conceded that the Organic Act for the Territory of Alaska, approved August 24, 1912 (37 Stat. at Large, 512), contains no provision, through the initiative, for obtaining an expression of the electors of the territory concerning proposed legislation, so it is apparent that a wholly unauthorized act of the territorial Legislature of 1915 to ascertain by ballot the views of the electors was not binding upon the next succeeding Legislature and should not be presumed to bind the courts. 6 R. C. L. pp. 44, 45, and cases cited. When a Legislature thus attempts to act entirely beyond the scope of the Organic Act or Constitution which gives it life, there is at least a suspicion that it was actuated by some undisclosed motive. See Lochner v. New York, 198 U. S. 60, 62, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133.

It is as much the duty of the territorial Legislature to recognize the Constitution of the United States and the Organic Act for the territory, in making laws, as it is the duty of the courts to accept them as their rule and guide in passing upon the validity of a statute. So the act in question derives no element of validity from the fact that a majority of the electors of the territory voted "for a general eight-hour law."

The sweeping scope and extraordinary wording of the present act can be better appreciated by comparing chapter 4 of the Session Laws of 1917, approved April 16, 1917, with the present act. Chapter 55, approved March 3, 1917. The comparison discloses the fact that chapter 55 is at best only a skeleton. There is nothing to connect the head (its title) with the body. There is no foundation, such as is contained in section 1 of chapter 4, to bring the act within the police power of the state, nor does the subject-matter of the act permit the reading into it of any such a foundation.

It is elementary that the language used by legislative bodies in embodying their ideas into laws should be clear, unequivocal, and free from ambiguity. Every one is presumed to

6 A.R.—7

know the law, and, in order that the fact may support the presumption, words should be used in their generally accepted sense.

Webster defines employment to mean "the act of employing or using; also, the state of being employed." Prior to the enactment of the statute, the word "employment" had a plain and definite meaning. Short v. Bullion, Beck & Champion Mining Co., 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 604. Our Legislature, not satisfied with the use of this word in its usual sense, says that it—

"shall be construed as the performance of labor or services for any individual, partnership, association or corporation, whether the person performing such labor or service be a member of such partnership or association or stockholder or officer of such corporation or not."

It will be noted that this is not an additional meaning given to the word "employment," but is a positive mandate to all how the word "shall be construed." This is important, for it goes to the very groundwork of the act. In the case above cited the Supreme Court of Utah held that a workingman who sued his employer for services for overtime performed under a statute (Laws Utah 1896, p. 219) providing that "the period of employment of workingmen in all underground mines or workings shall be eight (8) hours per day, except in cases of emergency where life or property is in imminent danger," could not recover, for, under the plain and definite meaning of "employment," both employer and employee were criminally liable where the employee performed more than the eight hours' service and the employer permitted the service to be performed. Discussing the question, the court says:

"The penal provision of the statute applies, and was intended to apply, not to the employer alone, but to any person who shall violate its provisions. The penal provision was aimed at the employer, and to any person who shall violate its provisions. The language of the act does not authorize any inference that it was intended by it to confer any right upon the employee to work more than eight hours a day, and relieve him from any criminal responsibility therefor. Such an inference is clearly repelled by the express provisions of the act making any person liable who violates any of its provisions."

The court considered the act, knowing that the word "employment" used therein had a well-recognized and definite meaning. As the court well said:

"The penal provision was aimed at the employer, and at any person who shall violate its provisions."

It is true that in the Utah case one of the justices wrote an able dissenting opinion, using as the basis of his argument a statement of the Supreme Court of the United States in Holden v. Hardy, 169 U. S. 397, 18 Sup. Ct. 383, 42 L. Ed. 780, to the effect that in that case the employer of labor was apparently the only one liable under the statute. The majority opinion of the Utah court considered the statement as mere dicta. Section 3 of the act in the Hardy Case provided that:

"Any person, body corporate, agent, manager or employer, who shall violate any of the provisions of sections one and two of this act, shall be guilty of a misdemeanor." (Laws Utah, 1896, p. 219.)

The corresponding section of the act considered by the Utah court was identical, with the exception that the word "deemed" was inserted before the word "guilty." The penal section of our act simply says:

"Any person, persons, association or corporation who shall violate or cause to be violated any of the provisions of this act shall be deemed guilty of a misdemeanor."

It will be observed that the words "agent, manager or employer" are omitted. This is indeed significant, and compels the belief, as heretofore indicated, that the Legislature deliberately intended to exclude the employer, for it not only left out any reference to the employer as such, but said in section 1 that " 'employment' as herein used shall be construed as the performance of labor or services." If there could be any doubt about what was intended, it appears to be entirely disposed of by reference to section 3 of chapter 4, which provides that:

"Any person, persons, body corporate, general manager, foreman or employer, who shall employ, or cause to be employed any person or persons in violation of the provisions of this act, shall be deemed guilty of a misdemeanor."

It will be noticed that the indefinite article "a," instead of the definite article "the," is used in the phrase "a period of employment"; also that the adverb "when" is used in the phrase "except in cases when life or property is in imminent danger." The language in chapter 4 is "the period of em-

ployment" and "except in case of emergency, where life or property is in imminent danger." Such a peculiar wording for chapter 55 may have been attended with considerable deliberation, but I do not consider it necessary to proceed with an extended discussion of the meaning thereby given the statute.

Obviously under the law it is intended that the one performing the labor is liable. If the employer also can be held liable, it is necessary to give to the phrase "cause to be violated," in section 2, its broadest interpretation. The important question for determination, as raised by the demurrers, is whether or not the act of the territorial Legislature under which this indictment is brought is contrary to and in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States. If by its enforcement it deprives any person of life, liberty, or property without due process of law, or denies to any person within its jurisdiction the equal protection of the laws, it must be held to be unconstitutional.

The question of the validity of the laws of state legislative bodies and of Congress itself respecting labor is neither novel nor unique. The Supreme Court has passed upon such questions so many times that it is now unnecessary to enter into a discussion of how each specific question has been determined. It is sufficient to know, for the purpose of ruling on these demurrers, that by their decisions the Supreme Court has determined:

First. Labor is property. Slaughter House Cases, 83 U. S. (16 Wall.) 36, 21 L. Ed. 394.

Second. "The general right to make a contract in relation to his business is part of the liberty protected by the Fourteenth Amendment, and this includes the right to purchase and sell labor, except as controlled by the state in the legitimate exercise of its police power." Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133.

Third. The police power of a state enables it "to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity." Barbier v. Connolly, 113 U. S. 31, 5 Sup. Ct. 359, 28 L. Ed. 923.

Fourth. The question of the state's police power is not involved in contracts of employment between the state as an employer and

its employee.  Atkins v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148.

Fifth.  "Legislative enactments should be recognized and enforced by the courts as embodying the will of the people unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution."  Atkin v. Kansas, 191 U. S. 223, 24 Sup. Ct. 128, 48 L. Ed. 148.

The act in question undertakes inartificially, as I have shown, to make it a crime for any wage or salary earner in this territory to labor under employment more than eight hours in any one calendar day, "except in cases when life or property is in imminent danger."  It is not premised, so far as I am able to discover, either in its title or in the body of the act, upon any theory that labor of all kinds is injurious to health and dangerous to life and limb, nor that employment for more than eight hours in any one calendar day is calculated to be injurious to the health of all wage and salary earners, inimical to the peace of society, detrimental to the morals of the inhabitants of the territory, a menace to the cause of education, or generally antagonistic to the general welfare of the community; and, on the other hand, there is no intimation that by thus limiting the hours of employment the industries of the territory will be increased, its resources experience greater development, and its wealth and prosperity be augmented.  If the Legislature acted in the legitimate exercise of its police power, its reasons for the exercise of this power are undisclosed; and a failure to set forth any reason at all, where the Legislature acts under the police power, is properly taken, if the nature of the employment itself does not suggest one, not only as an inference, but as a fact, that the reason does not exist.  It must always be borne in mind that legislative bodies have only such powers as are expressly conferred upon them by the provisions of the Constitution under which they act.  Mere caprice, or even an honest desire to act in response to a popular demand, cannot validate a statute, if the same is expressly forbidden by the Constitution.

Much of the argument in this case has centered around the decision of the Supreme Court in Lochner v. New York, supra, and Bunting v. Oregon, 243 U. S. 426, 37 Sup. Ct. 435, 61 L. Ed. 830, Ann. Cas. 1918A, 1043.  In the former case the Supreme Court held that:

"Section 110 of the Labor Law of the state of New York, providing that no employés shall be required or permitted to work in bakeries more than 60 hours in a week, or 10 hours in a day, is not a legitimate exercise of the police power of the state, but an unreasonable, unnecessary, and arbitrary interference with the right and liberty of the individual to contract, in relation to labor, and as such it is in conflict with, and void under, the federal Constitution."

The issue was on the question of health. Five of the justices decided that it was unconstitutional; four came to the conclusion that it was a proper exercise of police power by the Legislature. In the majority opinion the court said:

"It must, of course, be conceded that there is a limit to the valid exercise of the police power by the state. There is no dispute concerning this general proposition. Otherwise the Fourteenth Amendment would have no efficacy, and the Legislatures of the states would have unbounded power, and it would be enough to say that any piece of legislation was enacted to conserve the morals, the health, or the safety of the people; such legislation would be valid, no matter how absolutely without foundation the claim might be. The claim of the police power would be a mere pretext—become another and delusive name for the supreme sovereignty of the state, to be exercised free from constitutional restraint.  *  *  *  We think the limit of the police power has been reached and passed in this case. There is, in our judgment, no reasonable foundation for holding this to be necessary or appropriate as a health law to safeguard the public health or the health of the individuals who are following the trade of a baker.  *  *  *

"It might be safely affirmed that almost all occupations more or less affect the health. There must be more than the mere fact of the possible existence of some small amount of unhealthiness to warrant legislative interference with liberty. It is unfortunately true that labor, even in any department, may possibly carry with it the seeds of unhealthiness. But are we all, on that account, at the mercy of legislative majorities? A printer, a tinsmith, a locksmith, a carpenter, a cabinet maker, a dry goods clerk, a bank's, a lawyer's, or a physician's clerk, or a clerk in almost any kind of business, would all come under the power of the Legislature, on this assumption. No trade, no occupation, no mode of earning one's living, could escape this all-pervading power, and the acts of the Legislature in limiting the hours of labor in all employments would be valid, although such limitation might seriously cripple the ability of the laborer to support himself and his family.  *  *  *

"Statutes of the nature of that under review, limiting the hours in which grown and intelligent men may labor to earn their living, are mere meddlesome interferences with the rights of the individual, and they are not saved from condemnation by the claim that they are passed in the exercise of the police power and upon the subject of the health of the individual whose rights are interfered with,

unless there be some fair ground, reasonable in and of itself, to say that there is material danger to the public health, or to the health of the employés, if the hours of labor are not curtailed. * * * It is impossible for us to shut our eyes to the fact that many of the laws of this character, while passed under what is claimed to be the police power for the purpose of protecting the public health or welfare, are, in reality, passed from other motives. We are justified in saying so when, from the character of the law and the subject upon which it legislates, it is apparent that the public health or welfare bears but the most remote relation to the law."

Passing now to the dissenting opinion, on page 70 of 198 U. S., on page 549, of 25 Sup. Ct. (49 L. Ed. 937, 3 Ann. Cas. 1133), it says:

"It must be remembered that this statute does not apply to all kinds of business. It applies only to work in bakery and confectionary establishments, in which, as all know, the air constantly breathed by workmen is not as pure and healthful as that to be found in some other establishment or out of doors."

How can there be any question about what the Supreme Court would have decided if the constitutionality of a general eight-hour law had been under consideration?

It is argued by counsel that the Supreme Court has receded from the position taken in Lochner v. New York, and that Bunting v. Oregon has the effect of reversing it. I am unable to find that such is the fact; but, even if it were, it does not follow that the act under consideration is constitutional. It cannot be successfully contended that the Lochner Case has been lost sight of or forgotten, for in Wiseman et al. v. Tanner et al. (D. C.) 221 Fed. 694, in an able dissenting opinion, extensive quotations from the Lochner Case are found on pages 712 and 713. The majority and minority opinions were adopted in the case of Adams et al. v. Tanner et al., and, upon appeal to the Supreme Court of the United States, that court on the 11th of June, 1917, reversed the decision of the lower court. 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973.

My attention has been called to the following from the decision of the Supreme Court in Bunting v. Oregon, supra:

"It is enough for our decision if the legislation under review was passed in the exercise of an admitted power of government; and that it is not as complete as it might be, not as rigid in its prohibitions as it might be, gives, perhaps, evasion too much play, is

lighter in its penalties than it might be, is no impeachment of its legality. This may be a blemish, giving opportunity for criticism and difference in characterization, but the constitutional validity of legislation cannot be determined by the degree of exactness of its provisions or remedies. New policies are usually tentative in their beginnings, advance in firmness as they advance in acceptance. 'They do not at a particular moment of time spring full perfect in extent or means from the legislative brain. Time may be necessary to fashion them to precedent customs and conditions, and as they justify themselves or otherwise, they pass from militancy to triumph or from question to repeal."

In the following paragraph the court said:

"But, passing general considerations, and coming back to our immediate concern, which is the validity of the particular exertion of power in the Oregon law, our judgment of it is that it does not transcend constitutional limits."

The act under consideration (Laws Or. 1913, c. 102) provided in section 1:

"It is the public policy of the state of Oregon that no person shall be hired, nor permitted to work for wages, under any conditions or terms, for longer hours or days of service than is consistent with his health and physical well-being and the ability to promote the general welfare by his increasing usefulness as a healthy and intelligent citizen. It is hereby declared that the working of any person more than ten hours in one day, in any mill, factory or manufacturing establishment is injurious to the physical health and well-being of such person, and tends to prevent him from acquiring that degree of intelligence that is necessary to make him a useful and desirable citizen of the state."

And section 2:

"No person shall be employed in any mill, factory or manufacturing establishment in this state more than ten hours in any one day, except watchmen and employees when engaged in making necessary repairs, or in case of emergency, where life or property is in imminent danger; provided, however, employees may work overtime not to exceed three hours in any one day, conditioned that payment be made for said overtime at the rate of time and one-half the regular wage." .

It is such a law as the above that the Supreme Court held to be constitutional—a law based upon the exercise of the police power of the state. This act is as different from the act in question as daylight is from darkness. For the sake óf argument let us assume that the territorial Legislature intended to enact this law as a health measure. Does not our

Constitution seek to protect as fully the health of him who engages in private enterprise and by his own labor supports and educates his family as it does the health of him who offers his labor for sale in order to accomplish the same laudable purpose? If A. owns ten acres of land, and B., his neighbor, owns but one acre, how can it be said that A. can work for himself any number of hours per day, and, though he needs B.'s services for more than eight hours per day, and B. desires to sell his services for more than eight hours per day, yet B., if he sells his services for ten hours per day to A., will be violating the law, and A. also may be liable? Or, suppose A. is a bookkeeper, and B., his neighbor, is a carpenter. A. desires to add to the comfort of his home by having certain alterations made, and B. desires to do the work evenings, after his regular employment for the day is finished. There is no property or life in imminent danger. It is merely a comfort for A. and his family, and B. needs the extra money he can earn to buy books for his library. Assuming that B. on a certain day did work for a contractor eight hours, and on the same day worked for A. four hours, how can it be said that either A. or B. has violated the law? In the Lochner Case, supra, the Supreme Court considered a law attempting to fix ten hours as the limit for hours of labor of a baker as a "mere meddlesome interference." Under what possible theory can the Legislature say that the law it has enacted, in instances as above, is a proper exercise of the police power of the state? Instances similar to the above are limitless, and demonstrate how such laws are in direct violation of the Fourteenth Amendment to our Constitution.

Under the police power of the state, beneficial laws have been enacted for the purpose of regulating the hours of labor in mines, manufacturing establishments and other industries and occupations. The wisdom of such laws is generally recognized. They are upheld by the courts, and rightly so. But that does not mean that it is fundamentally correct to say that every man, irrespective of the nature of the work he follows, shall be precluded from selling more than eight hours of his labor in any one day, except in cases of emergency. We have an eight-hour law applicable to labor in certain kinds of mining. It is based upon right principles.

If a similar law is needed to regulate the hours of labor in any other industry, let the necessary premises be stated, and its enactment be another step in our onward march toward the betterment of social and economic conditions. But to take the miner, the teamster, the fisherman, the wood chopper, the farm laborer, the clerk, the carpenter, the machinist, the watchman, the waiter, the cook, and each and every other kind of wage or salary earners, bind them in the same bundle, enact a law regardless of, and under no theory of, the police power of the state, make no provision for payment for overtime, if required to work during an emergency, and then say to them, if you work for another for wages or salary more than eight hours in any one calendar day, except when life or property is in imminent danger, you are a criminal, is unreasonable and manifestly unjust.

The nature of the service performed by the defendant Coleman for the defendant corporation is not alleged in the indictment. But, even if it had been specifically set forth, there is nothing in the act to indicate that the Legislature acted with any consideration of what the police power of the state means. It was the duty of the Legislature to embody in the act the reason for the act. That function could not be delegated to the court. State v. Barba, 132 La. 768, 61 South. 784, 45 L. R. A. (N. S.) 546, Ann. Cas. 1914D, 1261; Burcher v. People, 41 Colo. 495, 93 Pac. 14, 124 Am. St. Rep. 143. Not only is it the court's right, but it is the court's duty, to take judicial notice of the peculiar conditions existing in this territory. From south of the 55th parallel of latitude the territory extends far north of the Artic Circle, and from east of the 132d meridian of longitude to beyond the 174th meridian east longitude. Its winters are long; its summers short; its industries, with the exception of lode and underground placer mining, are controlled almost entirely by climatic changes incident to the change of seasons; its area is more than half a million square miles; the open season for navigation, except on the Pacific, is short; its inhabitants, all told, number loss than 100,000 people. It is peopled by the vigorous and energetic. It is a country in the making. It may be said that this is as much a matter of legislative notice as it is a matter of judicial notice. This is true. But the failure on the part of a legislative body to

act in accordance with the plain provisions of the Fourteenth Amendment affords no valid excuse for a court to also disregard the amendment.

The cases cited below have fully discussed both sides of the many questions presented to the courts for determination where an exercise of the police power of the state has been involved:   Coppage v. Kansas, 236 U. S. 1, 35 Sup. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960; Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; Atkin v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148; Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957; Adair v. U. S., 208 U. S. 161, 28 Sup. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764; Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; Slaughter House Cases, 83 U. S. (16 Wall.) 36, 21 L. Ed. 39; Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Ellis v. U. S., 206 U. S. 246, 27 Sup. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589; 16 Ruling Case Law, pp. 470–497; Bunting v. Oregon, 243 U. S. 426, 37 Sup. Ct. 434, 61 L. Ed. 830, Ann. Cas. 1918A, 1043; Short v. Bullion-Beck & C. M. Co., 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 603; Dominion Hotel, Inc., v. State, 18 Ariz. 345, 161 Pac. 682; State v. Le Barron, 24 Wyo. 519, 162 Pac. 265, Ann. Cas. 1918D, 998; Perkins v. State, 80 Tex. Cr. R. 416, 190 S. W. 168; Saville v. Corless, 46 Utah, 495, 151 Pac. 51, L. R. A. 1916A, 651, Ann. Cas. 1918D, 198; State v. Legendre, 138 La. 154, 70 South. 70, L. R. A. 1916B, 1270; People v. Weiner, 271 Ill. 74, 110 N. E. 870, L. R. A. 1916C, 775, Ann. Cas. 1917C, 1065.

Some other questions have been raised by the demurrers, but I do not consider it necessary to pass upon them at this time.   An examination of the journals of both the House and Senate discloses the fact that the procedure leading up to the approval of the act was, to say the least, irregular. I am satisfied beyond all doubt that chapter 55 of the Session Laws of 1917 is plainly and palpably, beyond all question, in violation of the Fourteenth Amendment to the Constitution of the United States.   I am also of the opinion that it is class legislation and prohibited by the Organic Act.

The demurrers are therefore sustained.