14839

GASQUE, INC., *ET AL.* v. NATES, COMMISSIONER OF LABOR
OF SOUTH CAROLINA *ET AL.*

SOUTH CAROLINA DYERS & CLEANERS ASS'N *ET AL.* v.
NATES, COMMISSIONER

(2 S. E. (2d), 36)

272

July, 1938.

The decree of Judge Bellinger directed to be reported follows:

The first of the above-entitled actions was instituted in this Court by the service of summons and complaint and rule to show cause dated May 26, 1938. To the rule to show cause was attached a temporary restraining order which is still in force and effect.

The second of the above-entitled actions was similarly instituted shortly thereafter.

· The defendant in each of these cases has interposed a demurrer. Since similar issues are raised in both cases, they have, for convenience, been heard together.

·The facts as alleged in the *Gasque case* are that the plaintiffs in that case are employers of labor who will be affected by the provisions of Act No. 1348 of the Acts of 1938. Although the Act is referred to in the captions and pleadings in the several cases as Act No. 1348, it appears that its official permanent number is Act No. 943. It appears in the bound volume of the 1938 Acts on page 1883 and will be referred to hereinafter simply as Act No. 943.

The plaintiffs in the *Gasque case* allege that because of the peculiar character of retail drug stores and the necessity for maintaining service to the public, particularly the sale of drugs, medical, surgical and sick room necessities and supplies, it is necessary that drug stores keep open for long periods of time; that the drug stores all keep open seven days a week, most of them operating sixteen hours a day, some twenty-four hours a day, and that it is necessary to be prepared to meet emergency calls requiring delivery boys at all hours; that many of these delivery boys are under the age of eighteen years; that the delivery services must be maintained after 10 o'clock at night; that other mercantile establishments and industries exempted from the provisions of Act No. 943 are in competition with the drug stores; and that the provisions of this Act, preventing minors under the age of eighteen from working after 10 o'clock at night and preventing any person employed by a drug store, other than a prescription clerk, from working more than fifty-six hours per week, or twelve hours in any one day, are unconstitutional as applied to these plaintiffs in the various particulars set out in the complaint, and if the Act is applied to these plaintiffs it will deprive them of State and Federal constitutional rights; will destroy their business and subject them to a multiplicity of criminal prosecutions; that the plaintiffs have existing contracts with their employees under which

the employees now work more than fifty-six hours a week and whereby certain employees under eighteen years of age work between 10 p. m. and 6 a. m.

In view of the similarity of the cases, it is unnecessary to state the facts alleged in the second of the above-entitled causes.

The defendant has interposed a demurrer to each of the complaints and by so doing, of course, under the established law of this State, has admitted all the facts set out therein, which are well pleaded, but has not, of course, admitted the allegations of unconstitutionality which are allegations of law.

The attacks upon the constitutionality of this Act may be discussed under four heads:

1. Does the Act of the General Assembly providing that no employee of the manufacturing and mercantile establishments enumerated in the Act shall be permitted to work more than fifty-six hours per week, or more than twelve hours in any one day, deprive the plaintiffs of their property without due process of law or deny to them the equal protection of the law in violation of Art. 1, Section 5, of the State Constitution and of the 14th Amendment to the Federal Constitution, U. S. C. A.; does this provision impair the rights of the plaintiffs under the privileges and immunities clause (Art. 4, Section 2) of the Federal Constitution, or does this provision of the Act impair the obligation of existing contracts in violation of Art. 1, Section 8 of the Constitution of South Carolina, and Art. 1, Section 10 of the Federal Constitution?

2. Do the exemptions embraced in the provisos to Section 1 of the Act constitute illegal discrimination amounting to impairment of the plaintiffs' constitutional rights under the provisions enumerated in Question 1?

3. Do the Act and its title comply with the provisions of Art. 3, Section 17 of the South Carolina Constitution?

4. Do the provisions of Section 2 of the Act illegally delegate to the Commissioner of Labor certain legislative and judicial functions in violation of the separation of powers provisions of the State and Federal Constitutions?

In approaching the discussion of these constitutional provisions this Court is cognizant of the principles of constitutional law so frequently reiterated by the Supreme Court of the State that every presumption of constitutionality is to be indulged in because of the high respect which the judicial branch of the government holds for its co-ordinate branch, the legislative. Unless, therefore, plaintiffs can clearly convince this Court of the unconstitutionality of the statute involved here, it must be sustained.

As was said by the United States Supreme Court in *United States v. Butler,* 297 U. S., 1, 56 S. Ct., 312, 318, 80 L. Ed., 477, 102 A. L. R., 914: "When an act of Congress [we supply the State Legislature] is appropriately challenged in the courts as not conforming to the constitutional mandate, the judicial branch of the government has only one duty; to lay the article of the Constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former. All the court does, or can do, is to announce its considered judgment upon the question. The only power it has, if such it may be called, is the power of judgment. This court neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends."

It has long been recognized that the relationships between employers and employees are protected by the constitutional provisions prohibiting the impairment of contracts, the taking of life, liberty or property without due process and demanding equal protection. *Adair v. U. S.,* 208 U. S., 161, 28 S. Ct., 277, 52 L. Ed., 436, 13 Ann. Cas., 764; *Coppage*

*v. Kansas,* 236 U. S., 1, 35 S. Ct., 240, 59 L. Ed., 441,
L. R. A., 1915-C, 960; *Chas. Wolff Packing Co. v. Court
of Industrial Relations,* 267 U. S., 552, 45 S. Ct., 441, 69
L. Ed., 785; *Prudential Ins. Co. v. Cheek,* 259 U. S., 530, 42
S. Ct., 516, 66 L. Ed., 1044, 27 A. L. R., 27; *McLean v.
Arkansas,* 211 U. S., 539, 29 S. Ct., 206, 53 L. Ed., 315.

In the *Adair case, supra,* the Court said (208 U. S., 161,
28 S. Ct., 280): "The right of a person to sell his labor
upon such terms as he deems proper is, in its essence, the
same as the right of the purchaser of labor to prescribe the
conditions upon which he will accept such labor from the
person offering to sell. * * * In all such particulars
the employer and the employee have equality of right, and
any legislation that disturbs that equality is an abritrary in-
terference with the liberty of contract which no government
can legally justify in a free land."

This constitutional guaranty of liberty of contract
cannot, of course, be regarded as absolute in the
sense that there can be no State regulation of matters
as to which persons might desire to contract. There remains
the State's police power which permits the Legislature to
enact laws for the general good of the citizens of the State
even though the incidental effect of regulation thereunder
would be to deprive some individual of liberty or property.
When this police power is properly exercised, the deprivation
of life, liberty or property is with due process of law. Simi-
lar principles apply to the constitutional prohibition against
impairment of the obligation of a contract.

To be valid as a legislative exercise of police power,
the legislation must be clearly demanded for the pub-
lic safety, health, peace, morals or general welfare.
11 Amr. Juris., 1171; *West Coast Hotel Co. v. Parrish,*
300 U. S., 379, 57 S. Ct., 578, 81 L. Ed., 703, 108 A. L.
R., 1330, 11 Amr. Juris., 1001.

This brings us to a consideration of the first question
raised by the pleadings:

'1. Does the Act of the General Assembly providing that no employee of the manufacturing and mercantile establishments enumerated in the Act shall be permitted to work more than fifty-six hours per week, or more than twelve hours in any one day, deprive the plaintiffs of their property without due process of law or deny to them the equal protection of the law in violation of Art. 1, Section 5 of the State Constitution and of the 14th Amendment to the Federal Constitution; does this provision impair the rights of the plaintiffs under the privileges and immunities clause (Art. 4, Section 2) of the Federal Constitution, or does this provision of the Act impair the obligation of existing contracts in violation of Art. 1, Section 8 of the Constitution of South Carolina, and Art. 1, Section 10 of the Federal Constitution?

It would seem clear from the authorities that in view of our modern industrial development, there are certain classes of employment and certain classes of employees with regard to which it is not only proper but necessary for the State government, in the protection of the health, morals and general welfare of the people, to legislate as to hours of labor. The maximum hour statutes which have been upheld by the Courts of our country may be grouped as follows:

(1) Those statutes limiting the hours of employment of employees by states, or subdivisions thereof. *Atkin v. Kansas,* 191 U. S., 207, 24 S. Ct., 124, 48 L. Ed., 148; *Woods v. Woburn,* 220 Mass., 416, 107 N. E., 985, Ann Cas., 1917-A, 492; *Long Island R. Co. v. Department of Labor of N. Y.,* 138 Misc., 612, 247 N. Y. S., 278.

(2) Statutes limiting the hours of labor of women and minors. *Muller v. Oregon,* 208 U. S., 412, 28 S. Ct., 324, 52 L. Ed., 551, 13 Ann. Cas., 957; *Riley v. Massachusetts,* 232 U. S., 671, 34 S. Ct., 469, 58 L. Ed., 788; *Dominion Hotel, Inc., v. Arizona,* 249 U. S., 265, 39 S. Ct., 273, 63

L. Ed., 597; *Radice v. People of New York,* 264 U. S., 292, 44 S. Ct., 325, 68 L. Ed., 690.

(3) Statutes limiting the hours of labor in occupations dangerous for some especial reason to the life and health of employees. *Holden v. Hardy,* 169 U. S., 366, 18 S. Ct., 383, 42 L. Ed., 780; *State v. Cantwell,* 179 Mo., 245, 78 S. W., 569.

(4) Statutes limiting the hours of labor of persons in occupations where continuous employment for long hours might be dangerous to the public at large. *In re Twing,* 188 Cal., 261, 204 P., 1082.

Neither counsel for the plaintiffs nor the Commissioner of Labor have cited to the Court any decision where any Court has ever held valid a regulation of the hours of labor of all employees within a state, or the employees of all manufacturing and mercantile establishments. The South Carolina statute before the Court purports to fix the maximum number of hours which all employees in manufacturing and mercantile establishments, with certain exceptions referred to below, may work.

The decisions set out hereinabove show that where Courts have sustained maximum hour statutes there has been some particular health motive justifying the statute. So in *Muller v. Oregon,* 208 U. S., 412, 28 S. Ct., 324, 52 L. Ed., 551, the Court in sustaining the maximum hour statute as to women, emphasized a woman's physical structure and the performance of maternal functions which place her at a disadvantage in the struggle for subsistence.

In certain of the other decisions, such as *Holden v. Hardy,* 169 U. S., 366, 18 S. Ct., 383, 42 L. Ed., 780, the dangerous character of the particular occupation was held to justify limiting hours.

So also in the California case of *In re Twing,* 188 Cal., 261, 204 P., 1082, where the Court permitted a maximum hour statute as to prescription clerks in drug stores, emphasis was put upon the importance of the public of having

men handling dangerous drugs protected against long hours which might make them careless in such a way as to jeopardize the safety of the public.

There are numbers of cases where the Courts have refused to sustain general maximum hour statutes. Perhaps the leading case is *Lochner v. People of New York,* 198 U. S., 45, 25 S. Ct., 539, 544, 49 L. Ed., 937, 3 Ann. Cas., 113, in which the Court held unconstitutional a New York statute limiting employment in bakeries to sixty hours a week and ten hours a day. There the Court said: "The trade of a baker, in and of itself, is not an unhealthy one to that degree which would authorize the legislature to interfere with the right to labor, and with the right of free contract on the part of the individual, either as employer or employee. * * * Statutes of the nature of that under review, limiting the hours in which grown and intelligent men may labor to learn their living, are no more than meddlesome interferences with the rights of the individual, and they are not saved from condemnation by the claim that they are passed in the exercise of the police power and upon the subject of the health of the individual whose rights are interfered with, unless there be some fair ground reasonable in and of itself, to say that there is material danger to the public health, or to the health of the employees, if the hours of labor are not curtailed."

In *State v. Henry,* 37 N. Mex., 536, 25 P. (2d), 204, 208, 90 A. L. R., 805, the statute prohibited the working of male employees in mercantile establishments more than eight hours a day, or forty-eight hours in a week of six days. The Court, after fully reviewing the authorities, said: "The statute before us bears no evidence of a legislative purpose by it to safeguard health, morals, or safety. No claims are here made that it was so intended or will so result. Facts of which we may take judicial notice, and none other are before us, do not argue, and we are unable to conclude, that the health, morals, or safety of the general public or of the class reg-

ulated are at all involved in the sustaining or the overthrow of the act; or that there is involved any other specific object for which we have become accustomed to some yielding of the principles of personal liberty and of private property."

Many other Courts have similarly held that the general regulation of the hours of labor in private industry in which the Court can see no direct relation to the public health, welfare or morals, is not a proper exercise of the police power and must be held invalid as in violation of the constitutional protection of the individual. *United States v. Northern Commercial Co.,* 6 Alaska, 94; *State v. Barba,* 132 La., 768, 61 So., 784, 45 L. R. A. (N. S.), 546, Ann. Cas., 1914-D, 1261, *State v. Legendre,* 138 La., 154, 70 So., 70, L. R. A., 1916-B, 1270; *Commonwealth v. Boston & M. R. R.,* 222 Mass., 206, 110 N. E., 264; *State v. Pocock,* 161 Minn., 376, 201 N. W., 610; *State v. Mikiscek,* 225 Mo., 561, 125 S. W., 507, 135 Am. St. Rep., 597; *Low v. Rees Printing Co.,* 41 Neb., 127, 59 N. W., 362, 24 L. R. A., 702, 43 Am. St. Rep., 670.

Something was said in argument about sustaining the statute as an exercise of the extraordinary powers of government in times of an emergency and as a method of combating unemployment. There is nothing in the nature of the Act which would lead a Court to believe that it would have any substantial effect on unemployment. As a matter of fact, it might, as said by the Court in the *Henry case,* have an adverse effect on increasing employment.

It is also worthy of note that there are no recitations in this Act indicating that it was passed upon any theory that work for more than fifty-six hours in any week was injurious to the health or dangerous to the life of the employees. Nor is there anything in the Act indicating a purpose to relieve unemployment. Nor is there anything showing a purpose to protect the public from any evil results of longer hours of work.

The Court cannot conclude that it is dangerous to the health or safety of the employees or the public for an employee to work more than fifty-six hours in any one week in all of the manufacturing and mercantile establishments covered by the terms of the Act. On this first question, therefore, the Court must conclude that the Act violates the due process, equal protection and contract clauses of both State and Federal Constitutions, in that it is not a proper exercise of the public power of the State.

2. Do the exemptions embraced in the provisos to Section 1 of the Act constitute illegal discrimination amounting to impairment of the plaintiff's constitutional rights under the provisions enumerated in Question 1?

The Legislature has under the provisos in Section 1 of the Act exempted from its provisions a large number of manufacturing and mercantile establishments. The 14th Amendment to the Federal Constitution, Article 1, Section 5 of the State Constitution, and Article 4, Section 2, of the Federal Constitution, protect mercantile and manufacturing establishments which come within the provisions of this Act against discrimination in favor of other mercantile and manufacturing establishments expressly exempted from the operation of the Act.

It is true that the Legislature has the power in passing a law to make a classification of its citizens and the constitutional provisions are not violated by such classification if the law as passed is applicable alike to all persons belonging to the given class, but the Courts of the State and of the United States have always held that such classification cannot be made arbitrarily, but must rest upon some difference which bears a reasonable and just relation to the Act in which the classification was proposed. *Sirrine v. State,* 132 S. C., 241, 128 S. E., 172; *Standard Oil Co. v. City of Spartanburg,* 66 S. C., 37, 44 S. E., 377; *City of Laurens v. Anderson,* 75 S. C., 62, 55 S. E., 136, 117 Am. St. Rep., 885, 9 Ann. Cas., 1003; *Wingfield v. South Caro-*

*lina Tax Commission,* 147 S. C., 116, 144 S. E., 846; *Duke Power Co. v. Bell,* 156 S. C., 299, 152 S. E., 865·; *Colgate v. Harvey,* 296 U. S., 404, 56 S. Ct., 252, 80 L. Ed., 299, 102 A. L. R., 54; *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.,* 299 U. S., 183, 57 S. Ct., 139, 81 L. Ed., 109, 106 A. L. R., 1476; *F. S. Royster Guano Co. v. Virginia,* 253 U. S., 412, 40 S. Ct., 560, 64 L. Ed., 989; *Louisville Gas & Electric Co. v. Coleman,* 277 U. S., 32, 48 S. Ct., 423, 72 L. Ed., 770; *Frost v. Corp. Comm.,* 278 U. S., 515, 49 S. Ct., 235, 73 L. Ed., 483.

In *Colgate v. Harvey, supra,* the United States Supreme Court said (296 U. S., 404, 56 S. Ct., 256) : "But the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similiarly circumstanced shall be treated alike.' * * * The classification, in order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. The test to be applied in such cases as the present one is: Does the statute arbitrarily and without genuine reason impose a burden upon one group of taxpayers from which it exempts another group, both of them occupying substantially the same relation toward the subject-matter of the legislation? 'Mere difference is not enough.' "

It would be useless to quote at length from the other United States Supreme Court decisions referred to above and the many others which state and apply this rule, because the language of each is almost identical.

In our own case of *Sirrine v. State, supra* (132 S. C., 241, 128 S. E., 175), the Court thus quotes with approval from the case of *State v. Garbroski,* 111 Iowa, 496, 82 N. W., 959, 56 L. R. A., 570, 82 Am. St. Rep., 524: "Equality in right, privilege, burdens and protection is the thought running through the Constitution and laws of the State; and an act intentionally and necessarily creating inequality

therein, based on no reason suggested by necessity or diference in condition or circumstances, is opposed to the spirit of free government, and expressly prohibited by the Constitution."

And accepts also with approval the following statement of the law from a note by Mr. Freeman in 93 Am. St. Rep., 111: "A law is not constitutional if it confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercse of a common right upon a class of persons arbitrarily selected from the general body of those that stand in the same relation to the subject of the law. The Legislature may classify, for the purpose of legislation, if some intrinsic reason exists why the law should operate upon some and not upon all, or should affect some differently from others, but this classification must be based upon differences which are either defined by the Constitution, or are natural or intrinsic, and which suggest a reason that may rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification. The clause must be characterized by some substantial qualities or attributes, which render such legislation necessary or appropriate for the individuals of the class."

It is also true that the right of the Legislature to classify is much broader in the field of taxation than it is in criminal statutes such as this. Particularly pertinent is the decision of our Court in *Ex parte Hollman,* 79 S. C., 9, 60 S. E., 19, 25, 21 L. R. A. (N. S.), 242, 4 Ann. Cas., 1105, where the Court quotes from the United States Supreme Court decision of *Connolly v. Pipe Co.,* 184 U. S., 540, 22 S. Ct., 431, 46 L. Ed., 679: "In prescribing regulations for the conduct of trade, it cannot divide those engaged in trade into classes and make criminals of one class, if they do certain forbidden things, while allowing another and favored class, engaged in the same domestic trade, to do the same things with impunity. It is one

thing to exert the power of taxation so as to meet the expenses of government, and at the same time indirectly, to build up or protect particular interests or industries. *It is quite a different thing for the state under its general police power to enter the domain of trade or commerce, and discriminate against some by declaring that particular classes within its jurisdiction shall be exempt from the operation of a general statute, making it criminal to do certain things connected with domestic trade or commerce.* Such a statute is not a legitimate exertion of the power of classification, rests upon no reasonable basis, is purely arbitrary, and plainly denies the equal protection of the laws to those against whom it discriminates." (Italics supplied by South Carolina Supreme Court.)

So we note that the South Carolina Supreme Court has refused to sustain a statute providing that Confederate veterans should be exempted from licenses for carrying on business within the State (*City of Laurens v. Anderson,* 75 S. C., 62, 55 S. E., 136, 117 Am. St. Rep., 885, 9 Ann. Cas., 1003); has refused to sustain a statute requiring that dealers in oil be licensed and exempting from this requirement dealers handling oil on which a license had already been paid (*Standard Oil Co. v. City of Spartanburg,* 66 S. C., 37, 44 S. E., 377); and has held invalid a statute allowing the confiscation of goods exposed for sale on Sunday when owned by a corporation. *Xepapas v. Richardson,* 149 S. C., 52, 146 S. E., 686. The distinction which this Court reaches from these decisions, as well as from the encyclopedias (12 Am. Juris., 151, 156), is that the classification must be based upon a real difference which bears a fair, natural and reasonable relation to the object of the legislation and must not be arbitrary and baseless.

Coming now to an examination of the Act, it will be found helpful to list in parallel columns businesses exempted and those regulated:

| Businesses Exempted | Businesses Regulated |
| --- | --- |
| Hotels | Boarding houses |
| | Tourist camps |
| | Y. M. C. A.s and Y. W. C. A.s |
| | Clubs with living quarters |
| | School dormitories |
| | Apartment houses |
| | Hospitals |
| Eating places connected with hotels | Independent restaurants |
| | Lunch stands |
| | Delicatessens |
| Office force and truck drivers of laundries | Office force and truck drivers of dry cleaners |
| Saw mills, planing mills, kaolin industries | Brick and tile works |
| | Lumber yards |
| Canning factories of fruits, vegetables and other farm products | Canning factories of commodities other than farm products |
| | Cold storage plants |
| Cotton mills, oil mills, printing establishments | Fertilizer plants, flour mills |
| | Manufacturers of clothing, furniture and all other manufacturing plants |
| Dairying | Processing and packing of meat |
| Gatherers and processors of fish, shrimp and oysters | Sale and delivery of milk and milk products |
| | Soft drink bottlers |
| | Distribution and sale of soft drinks |
| | Bakers |
| | Processing of tobacco |
| Gold mining | Mining other than gold and kaolin |
| Retail liquor stores | Wholesale liquor stores. Beer and light wine dealers |
| Wholesale and retail shrimp, fish and oyster markets | Drug stores and all other establishments for the sale of goods wholesale or retail |
| Nurses, prescription clerks and all learned professions | Hospitals and ambulance service |
| | Barbers |
| | Beauticians |
| | Barber and beauty shop supplies |
| | Dental laboratories |
| | Medical supplies |
| | Undertakers and funeral directors |
| | Insurance offices |
| | Photographers |
| | Tailors |

| | |
|---|---|
| | Real estate offices |
| | Advertising agencies |
| All building trades including plumbing, painting, etc. | Blacksmiths |
| | Sign works |
| | Transfer companies |
| | Warehousemen |
| | Shoe repairing |
| | Metal workers |
| | Garage and automobile service |
| Domestic labor in private homes | Similar labor, cooks, m a i d s, porters, janitors, etc., in businesses not exempted |

An examination of these columns will illustrate very clearly that the classification of the Legislature is arbitrary and without reasonable basis. There can be no logical distinction between the work of a waitress in an eating place connected with a hotel and her work in an independent restaurant. There would seem to be no reason why a truck driver for a laundry should be exempt, while a truck driver for a dry cleaning plant should be regulated. There would seem to be no reason why brick and tile works should be regulated and employees of saw mills, turpentine plants and logging industries should be exempt. Cotton gins and oil mills are not as healthful places of employment as book stores or filling stations, yet the gins and oil mills are exempt while the book stores and filling stations are regulated.

Comparisons might be multiplied end upon end. But having in mind that the object of the Act must necessarily be the protection of the health, morals or safety of the general public and employees, the Court cannot say that the industries included within the provisions of the Act are of such a character as to justify the Legislature in saying that work in these industries for more than fifty-six hours per week jeopardizes the health of the employee, while work for more than fifty-six hours in the exempted businesses does not.

It is also to be noted that the effect of this Act would be to place certain of the regulated mercantile establishments and industries at a competitive disad-

vantage with certain of those exempted. For instance, eating places connected with hotels, whether dining rooms, cafes, coffee shops, lunch stands or tea rooms, are exempted, while restaurants, drug stores selling light lunches, independent coffee shops and tea rooms are included. Under a 1938 statute retail liquor stores which are exempted from the provisions of the Act are in competition as to certain wines with drug stores, which are included in the Act. Saw mills exempted from the Act are in competition as to building materials with brick and tile works, which are regulated by the Act.

Many decisions from various states (*United States v. Northern Commercial Co.,* 6 Alaska, 94; *State v. Le Barron,* 24 Wyo., 519, 162 P., 265, Ann Cas., 1918-D, 998; *Low v. Rees Printing Co.,* 41 Neb., 127, 59 N. W., 362, 24 L. R. A., 702, 43 Am. St. Rep., 670; *State v. Barba,* 132 La., 768, 61 So., 784, 45 L. R. A. (N. S.), 546, Ann. Cas., 1914-D, 1261; *State v. Legendre,* 138 La., 154, 70 So., 70, L. R. A., 1916-B, 1270; *State v. Henry,* 37 N. Mex., 536, 25 P. (2d), 204, 90 A. L. R., 805; *State v. Pocock,* 161 Minn., 376, 201 N. W., 610) have held that this illegal discrimination in maximum hour legislation requires a holding that the Act is unconstitutional. In many of these cases the exemptions were nothing like as flagrant as those before the Court. For instance, in *Low v. Rees Printing Co., supra,* an exemption as to laborers engaged in farm or domestic work was held sufficient by the Nebraska Court to require the voiding of the Act because of discrimination.

The Minnesota Court in the case of *State v. Pocock, supra,* held there was illegal discrimination where the Act purported to exempt employees in places of amusement, newspaper plants, canneries, flour mills and automobile repair shops.

The Wyoming Court in *State v. Le Barron, supra,* struck down a maximum hour Act with regard to the employment of women in restaurants because it exempted from its pro-

visions "hotels and restaurants operated by railroad companies."

Another discrimination hostile to the constitutional provisions is found in the proviso that the terms of the Act should not apply to restaurants and public eating places in towns, villages and communities of less than 3,000 population, should not apply to mercantile establishments in towns of less than 2,500 population, or to manufacturing and mercantile establishments in rural areas. There would seem to be no justification for this distinction. Work for more than fifty-six hours in a manufacturing plant in a rural area is no less injurious than work for the same period of time in a manufacturing plant in a city. An employee in a shoe store in Barnwell should not be permitted to work longer than an employee in a shoe store in Charleston. Under the Act a waitress in an air-conditioned restaurant in Columbia may work only fifty-six hours a week but the waitress in a barbecue stand in a community of less than 3,000 people may work as long as she contracts.

These distinctions do not comply with the constitutional requirements. The Court is of opinion that the Act is fatally defective by reason of the unconstitutional discriminations contained therein.

Counsel for the defendant, recognizing the seriousness of the discriminatory features of the attacked Act, have suggested that the Court might strike out the provisos contained in Section 1, and hold the remaining portion of the Act valid because of the saving clause contained in Section 7 of the Act. The purpose of a proviso clause in an Act has thus been discussed by our Court:

From *State ex rel. Walker v. Sawyer,* 104 S. C., 342, 88 S. E., 894, 895: "The words 'provided that' are usually used to express a condition, limitation, or exception. Perhaps, no words more apt for that purpose could be chosen. But they are not always so used; and their meaning must be gathered from the context and a consideration of the whole instrument."

From *Shealy v. Seaboard Air Line R. Co.*, 131 S. C., 144, 126 S. E., 622, 626: " 'The office of a proviso is either to except something from the enacting clause or to qualify or restrain its generality, or to exclude some ground of misinterpretation of it.' 25 R. C. L., § 231, p. 984. The main provision of a statute and the proviso are to be read together with a view to carry into effect the whole purpose of the law."

Were this Court to strike out the provisos in Section 1 of the Act it would clearly contravene the intention of the Legislature because the effect of such an order would be to subject to the fifty-six hour bill all of the industries expressly exempted by the terms of the Act and would subject all mercantile and manufacturing establishments in rural areas, towns and communities of less than 2,500 people, although the Legislature expressly said that the Act was not to apply to those areas.

In other words, by striking out the provisos the Act would become a general Act relating to hours of labor in all manufacturing and mercantile establishments in the State. The body of the Act, as clearly shown by Section 1 as passed by the Legislature, did not intend to regulate the hours of labor in all manufacturing and all mercantile establishments in all parts of the State. Therefore, if the Court followed the suggestion of counsel for the State, the Court would be legislating, which is exclusively the province of the General Assembly. This statute is one that cannot be saved by striking down a portion of the Act despite the provisions of Section 7.

3. Do the Act and its title comply with the provisions of Article 3, Section 17 of the South Carolina Constitution?

It is the contention of the plaintiffs that the subject of the statute is the regulation of hours of labor in *certain* manufacturing and mercantile establishments of the State and since the title indicates a regulation of hours of labor in *all* manufacturing and mercantile establishments, there is an antagonism between the body of the Act and the

title which violates Section 17 of Article 3 of the State Constitution. That section requires that: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

This section of the Constitution has been before our Supreme Court in many cases, and has been generally construed with great liberality, the Court never requiring the title to be an index to the Act, but holding that the Constitution is complied with when the title expresses the general subject of legislation and the provisions in the body of the Act are germane thereto as means to accomplish the object expressed in the title. *Arthur v. Johnston et al.,* 185 S. C., 324, 194 S. E., 151; *Crawford v. Johnston,* 177 S. C., 399, 181 S. E., 476; *Plowden v. Beattie,* 185 S. C., 229, 193 S. E., 651.

In the present case the title indicates that the purpose and subject-matter of the statute is the regulation of hours of labor. Nothing in the body of the Act goes beyond that subject.

The cases cited by the plaintiffs, *State ex rel. Ray v. Blease,* 95 S. C., 403, 79 S. E., 247, and *Robinson v. City of Columbia,* 116 S. C., 193, 107 S. E., 476, are both cases in which the body of the Act was broader than the title, and, therefore a party whose rights were actually affected by the terms of the body of the Act might have no notice of the application of the Act to himself by reading the title. In the present case the objection is the converse, that the subject-matter of the Act as expressed in the title is broader than the terms of the Act itself. The reason behind the rule of the cases cited by plaintiffs, therefore, is inapplicable here and this Court is constrained to hold that the broad subject of the legislation is so expressed in the title of the Act as to satisfy the constitutional mandate.

The final question before the Court is: 4. Do the provisions of Section 2 of the Act illegally delegate to the Commissioner of Labor certain legislative and judicial functions

in violation of the separation of powers provisions of the State and Federal Constitutions?

The Act is challenged by the plaintiffs as containing illegal delegation because in Section 2(b) the power is conferred upon the Commissioner of Labor to dispense with the requirement as to posting the schedule of hours of employment weekly in advance when the Commissioner is satisfied by evidence that the character of the work is of such a nature as to make it difficult to fix the hours of employment in advance; and in Section 2(c) to grant an employer, upon application and proof of necessity, permission to work his employees more than fifty-six hours per week during a period not to exceed thirty days in any calendar year.

It is the opinion of the Court that these are matters of an administrative nature rather than of a judicial or legislative nature. It has been consistently held by our Supreme Court that when an Act is complete on its face no unconstitutional delegation of legislative authority can be imputed to it by the fact that authority or discretion as to its execution is vested in an administrative officer, commission or board. *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269; *Crawford v. Johnston,* 177 S. C., 399, 181 S. E., 476; *Santee Mills v. Query,* 122 S. C., 158, 115 S. E., 202; *State ex rel. Port Royal Mining Co. v. Hagood,* 30 S. C., 519, 9 S. E., 686, 3 L. R. A., 841, *Stovall et al. v. Sawyer, Chief Highway Com'r.,* 181 S. C., 379, 187 S. E., 821; *Bramlette v. Stringer,* 186 S. C., 134, 195 S. E., 257; *State v. Ross,* 185 S. C., 472, 194 S. E., 439; *Fisher v. J. H. Sheridan Co.,* 182 S. C., 316, 189 S. E., 356, 108 A. L. R., 981.

The rule is thus expressed in the case of *State ex rel. Richards v. Moorer, supra* (152 S. C., 455, 150 S. E., 273): "There is a distinction, however, between delegating power to make a law and conferring authority or discretion as to its execution. If a legislative act is clothed with all the forms of law and is complete in itself in form and substance, if the officer, board, or commission to whom the authority is al-

leged to have been delegated is given no power to add to or take away from the law as enacted, if nothing is left to discretion as to what shall constitute the form and substance of the statute, and if the act embodies a full and complete expression of the legislative will, matters which may be fairly regarded as relating to the administration and execution of the statute, even though involving discretion, do not constitute an unauthorized delegation of legislative authority."

From *Stovall et al. v. Sawyer, Chief Highway Com'r, supra* (181 S. C., 379, 187 S. E., 824) :

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.   *   *   *

"It has been held that the law-making body has authority to exercise its police powers by general laws, and to confer upon boards and other agencies authority and discretion to execute these laws, giving to such agencies the power to prescribe rules and impose penalties for their violation."

From the case of *State v. Ross, supra* (185 S. C., 472, 194 S. E., 441) : "The court in the authority just cited set forth, approved, and adopted the view as stated in Locke's Appeal, 72 Pa., 491, 13 Am. Rep., 716, as follows: 'Then, the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' "

In the opinion of the Court, the Act here challenged is complete on its face and leaves to the discretion of the Commissioner of Labor only the determination of facts or cir-

cumstances which the Act, by its own terms, has made its applicability conditioned upon. The Legislature has said as definitely as practicable, what facts will justify the suspending of certain requirements of the statute, and it can constitutionally leave the determination of when those facts exist to an administrative officer.

Although, as just indicated, the so-called Hours of Labor Act would have survived plaintiffs' challenges of its validity under Article 3, Section 17 of the State Constitution and the separation of powers provisions of the State and Federal Constitutions, the Act does violate plaintiffs' more fundamental constitutional guaranties and must be declared void.

This Court is well aware of the importance of this decision to employers and employees in the State as well as to the public at large, and regrets that there has been any delay in its rendition. However, counsel for the defendant, Nates, have not furnished the Court, until the past week, a full brief of their authorities, and this fact, coupled with Court assignments outside of the circuit, has made impossible an earlier decision.

The Court is forced to the conclusion that the Act under consideration violates the several provisions of the State and Federal Constitutions as enumerated in this decree, and hesitant as the Court is to strike down an Act of the Legislature, the conclusion that the Act is unconstitutional and void is inescapable. It is therefore ordered and adjudged:

That the defendant, John W. Nates, Commissioner of Labor of the State of South Carolina, representing himself and all other law-enforcing officers who may be charged with the enforcement of the Hours of Labor Act of 1938 (No. 943), be and hereby is permanently enjoined and restrained from enforcing the provisions of this Act against the plaintiffs in each of the above-entitled actions and against other parties who are entitled to protection by reason of the representative nature of these suits, and those in favor of whom temporary restraining orders were heretofore granted at the time of the institution of these two actions.

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *M. J. Hough, Assistant Attorneys General, John W. Crews* and *Fred D. Townsend,* for appellants,

*Messrs. Robinson & Robinson,* for respondents, Gasque, Inc., *et al., C. T. Graydon* and *John E. Edens,* for respondents, South Carolina Dyers & Cleaners *et al.,*

March 14, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

These two actions for injunctive relief were brought against the appellants for the purpose of restraining them from enforcing the provisions of Act No. 943, which appears in the Acts of 1938 at page 1883. Temporary restraining orders were granted, and in each case a rule was issued, directing the defendants to show cause why these restraining orders should not be made permanent. In each of the cases the defendants interposed a demurrer, and thereafter for the sake of convenience the two cases were heard together by his Honor, Judge G. Duncan Bellinger, on July 19, 1938.

Judge Bellinger, on October 7, 1938, filed his decree, wherein he overruled the demurrers and held the Act to be unconstitutional, upon the grounds therein set out, and permanently enjoined the appellants from enforcing the provisions of the Act against the plaintiffs. It is upon exceptions filed to this decree that the present appeal is taken. Inasmuch as the two actions raise similar issues, were heard together in the Court below, were disposed of in a single decree, and involved the same questions on appeal, they were heard together in this Court.

All of the questions raised on appeal were passed upon in the decree of the lower Court, and in our opinion were correctly decided.

After a careful study and consideration of the entire record we adopt as the judgment of this Court the able and well-considered decree of the lower Court, which will be·reported.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.